# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| KEYION LEWIS,<br>TDCJ No. 02237246, | § § § | |
| Petitioner, | § § | |
| v. | § § | A-20-CV-339-LY |
| BOBBY LUMPKIN,[1] Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court are pro se Petitioner Keyion Lewis's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent's Response (ECF No. 11). Having reviewed the record and pleadings submitted by both parties, the undersigned concludes

---

[1] The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a party. FED. R. CIV. P. 25(d).

1

Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In March 2018, Petitioner was charged by two separate indictments: one for robbery (D-1-DC-18-300355) (ECF No. 12-8 at 5) and one for aggravated robbery (D-1-DC-18-300418) (ECF No. 12-19 at 5.) At the time these indictments were filed, Petitioner was on deferred adjudication for an aggravated robbery charge he had pleaded guilty to in January 2015. (ECF No. 12-9 at 21.)

In November 2018, a hearing was held on the State's motion to proceed with an adjudication of guilt for the 2015 aggravated robbery case. (ECF No. 12-11 at 9.) The hearing included evidence in support of the 2018 indictments. (*Id.*) At the end of the hearing, the trial court adjudicated Petitioner guilty of the 2015 charge and sentenced him to fifteen years imprisonment. (*Id.*) Thereafter the trial court granted the parties' agreed motion for a new trial and accepted a plea agreement to which Petitioner would plead guilty to all three charges. Petitioner entered his guilty plea as agreed and was sentenced to ten years imprisonment on each charge, to run concurrently. (*Id.*) *State v. Lewis*, Nos. D-1-DC-18-300355, -300418 (427th Dist. Ct., Travis Cnty., Tex. Dec. 19, 2018.) (ECF Nos. 12-8 at 6-7; 12-19 at 6-7.) Pursuant to the plea agreements, Petitioner waived his right to appeal. (*Id.* at 8-12.) Petitioner did not file a direct appeal.

On July 19, 2019, Petitioner filed two state habeas corpus applications, one challenging the 2018 robbery conviction (WR-90,804-01) and one challenging the 2018 aggravated robbery conviction (WR-90,804-02). Aside from the case numbers listed, the applications are identical and list the following three grounds of relief:

1. The prosecutor engaged in misconduct;
2. Ineffective assistance of trial counsel; and

    3. Insufficient evidence to support Petitioner's guilty plea.

(ECF No. 12-8 at 14-32.)[2] The trial court ordered Petitioner's counsel to file an affidavit responding to the writ application, which he did; the State also filed a response. (ECF Nos. 12-8 at 43-48; 12-9 at 3-27.) On January 3, 2020, the trial court recommended denying the applications. (ECF Nos. 12-11 at 9-12; 12-21 at 14-17.) On February 19, 2020, the Texas Court of Criminal Appeals denied both applications without written order on the findings of the trial court without hearing and on the Court's independent review of the record. *Ex parte Lewis*, Nos. WR-90,804-01, -02. (ECF No. 12-1; 12-12.)

Petitioner filed the instant federal habeas petition on March 30, 2020, raising the same claims that were raised and rejected in his state writ applications. (ECF No. 1.) On July 16, 2020, Respondent filed a response. (ECF No. 16.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a

---

[2] Because the clerk's records in both state habeas applications are essentially identical, the Court will only cite to materials from the robbery conviction, WR-90,804-01.

complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

In the instant habeas petition, Petitioner claims he should be granted relief based on prosecutorial misconduct, ineffective assistance of counsel, and insufficient evidence. However, because Petitioner voluntarily pled guilty to the convictions he is now challenging, he waived the right to challenge all non-jurisdictional defects in this proceeding. Moreover, each of these claims

were rejected by the state court during Petitioner's state habeas proceedings. Federal habeas relief is therefore unavailable because Petitioner has not shown that the state court's merits adjudication was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Richter*, 562 U.S. at 101.

*Petitioner's Plea Was Voluntary*

It is axiomatic that a guilty plea is valid only if entered into voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "'real notice of the true nature of the charge against him.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *United States v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012).

Petitioner was represented by Michael Watson during his revocation hearing and subsequent guilty plea. In his affidavit before the state habeas court, Mr. Watson stated that Petitioner told him he was innocent of the two new charges against him but would plead guilty if the State agreed to order him back on probation. The State, however, was not amenable to this and offered ten years imprisonment. Petitioner rejected the offer and the parties proceeded to the revocation hearing. (ECF No. 12-8 a 44-45.)

At the hearing, the court heard the State's evidence supporting the two new charges and also heard from Petitioner's sister and mother in support of his defense. The court then made a finding that Petitioner had violated his probation, and then revoked it and sentenced Petitioner to fifteen years imprisonment. (*Id.* at 45.) Mr. Watson spoke to the prosecutor after the hearing and the parties agreed to a motion for new trial, at which time Petitioner entered his guilty plea to all three charges and was sentenced to ten years imprisonment to run concurrently. (*Id.*)

The voluntariness of Petitioner's plea is demonstrated by his signature on the plea agreement, which is entitled "Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulations & Judicial Confession." (ECF Nos. 12-8 at 8-13; 12-19 at 8-13.) The agreement shows that Petitioner was represented by counsel and includes the following statements:

> I voluntarily enter my plea of GUILTY to the abovementioned offense. I am pleading guilty (or *nolo contendere*) because I am guilty and for no other reason. My plea is entered freely and voluntarily, and without any coercion duress or promise of benefit other than that stated in the plea bargain agreement. I request the Court to consider probating any sentence imposed, and as to the issue of punishment agree that the pre-sentence investigation report of the Community Supervision and Corrections Department may be considered by the Court. . . .
>
> I can read and write the English language; I have read this entire document and discussed it fully with my attorney; I understand this document completely, including the Court's admonishments, and I am aware of the consequences of my plea. My attorney has discussed with me the law and facts applicable to this case, and I am satisfied that I have been effectively represented. . . .

(*Id.* at 11.) Petitioner initialed the first statement and then signed his name underneath the second one. *Id*. Trial counsel also signed the plea agreement, affirming he had "fully consulted with the defendant and have carefully reviewed with him/her this entire document. I believe s/he is mentally competent, understands the admonishments, is aware of the consequences of the plea, and is freely, voluntarily, knowingly and intelligently entering his/her plea of guilty, waiver, stipulation and

judicial confession." *Id*. at 9. Finally, the trial judge signed the document underneath the paragraph which states

> The Court hereby finds that (1) the Defendant was sane when the alleged offense was committed, is mentally competent, is represented by competent counsel, understands the nature of the charges against him/her, and has been warned of the consequences of a plea of guilty or *nolo contendere*, including the minimum and maximum punishment provided by law; (2) the attorney for the Defendant and the State consent to and approve the waiver of trial by jury and agree to stipulate the evidence and judicial confession in this case; and (3) the Defendant understands the consequences of his plea, and the Defendant's plea of guilty, statements, waivers, consent, stipulations, and judicial confession were freely, voluntarily, knowingly and intelligently made. The Court hereby approves the waiver of a jury trial, all other waivers, the consent to stipulate evidence, and judicial confession.

*Id*.

Petitioner's signature on the plea document is *prima facie* proof of the validity of the plea, *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), and is entitled to "great evidentiary weight" *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). Accordingly, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

In the instant petition, Petitioner first claims the prosecutor engaged in misconduct by failing to disclose material exculpatory evidence, i.e. an expert witness, video tape showing the robbery victim did not suffer an injury, a hospital report, and fingerprint evidence showing Petitioner did not use a weapon in the aggravated robbery case. He next claims Mr. Watson provided ineffective assistance by failing to (1) obtain surveillance video footage showing Petitioner did not injure the victim; (2) obtain Petitioner's mental health records; and (3) correct

7

the victim's testimony that Petitioner caused her injury. He also argues Mr. Watson was ineffective when he allowed Petitioner to enter into a plea agreement despite knowing Petitioner suffered mental health problems. In Petitioner's last ground for relief he claims there is insufficient evidence to support his guilty plea.

Regarding the prosecutorial misconduct claim, Petitioner fails to demonstrate how his allegations relate in any way to the voluntariness of his guilty plea. It is settled Fifth Circuit precedent that there is no constitutional right to material exculpatory evidence prior to a guilty plea. *Alvarez v. City of Brownsville*, 904 F.3d 382, 392 (5th Cir. 2018) (en banc); *United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (guilty plea waives the right to claim a violation of *Brady v. Maryland*, 373 U.S. 83 (1963)). Petitioner's claim that there was insufficient evidence to support his guilty plea also does not attack the voluntariness of his plea. *Matthew v. Johnson*, 201 F.3d 353, 368 (5th Cir. 2000) ("In general, state courts are not required by the Constitution to ensure that a factual basis for a guilty plea even exists"); *Smith v.* McCotter 786 F.2d 697, 702 (5th Cir. 1986) (state courts have no constitutional duty to establish a factual basis for a guilty plea prior to its acceptance); *United States v. Hanyard*, 762 F.2d 1226, 1229–30 (5th Cir. 1985) (waiving claim regarding sufficiency of the evidence).

Further, most of the allegations Petitioner bases his ineffective-assistance-of-counsel (IAC) claim on—i.e. that Mr. Watson failed to obtain video surveillance footage and Petitioner's mental health records, and also failed to correct the victim's revocation-hearing testimony—are also non-jurisdictional defects and do not relate to the voluntariness of Petitioner's plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea). Accordingly, all of these claims are waived by Petitioner's guilty plea.

*Ineffective Assistance of Counsel*

Petitioner's allegation that Mr. Watson provided ineffective assistance of counsel when he permitted Petitioner to plead guilty despite knowing about Petitioner's mental health issues might, if successful, implicate the voluntariness of his plea. According to Petitioner, Mr. Watson knew Petitioner suffered from mental health issues like depression and addiction and should have sought to have Petitioner placed in a mental health institution or substance abuse program. Instead, Mr. Watson allowed Petitioner to plead guilty to ten years imprisonment. Because a valid guilty plea waives all non-jurisdictional defects, *see Smith*, 711 F.2d at 682, the Court considers this claims only to the extent it implicates the voluntariness of Petitioner's plea, *see Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. To establish counsel's performance as deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688–89. In the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citations omitted). This assessment depends in part on "a prediction of what the outcome of a trial might have been." *Id*.

9

Mr. Watson addressed this allegation in his state habeas affidavit. Mr. Watson attested he believed Petitioner was competent to stand trial and that he was unable to locate any records diagnosing Petitioner with a mental health disorder. Mr. Watson stated that Petitioner was able to understand their conversations and participate in meetings regarding discovery. In their last meeting prior to the revocation hearing, Mr. Watson stated

> [Petitioner] started making statements of him not understanding. However, I did not believe he was being honest. We did not have any of these problems in our previous conversations. When we changed the conversations to a possible deal that included probation, he changed and understood. He said he would accept the deal. When the conversation changed back to time, [Petitioner] changed and acted like he did not understand anything.
>
> After the hearing, Defense Counsel worked out a deal for 10 years on all three. Defense Counsel met with [Petitioner] in the county jail after the hearing. I discussed the current 15 year sentence and the current offer of 10 if he waives appeal. [Petitioner] completely understood. He did not show any of the issues from a previous meeting. When went to court to handle the case, we discussed his waiver of appeal. [Petitioner] understood. We entered into the plea.

(ECF No. 12-9 at 19-20.) Mr. Watson also stated he tried to negotiate Petitioner's admittance to the Substance Abuse Felony Punishment Facility with the State. However, the State was not open to anything other than prison time. And, in Mr. Watson's opinion, Petitioner was not eligible for a mental health facility because he was competent to stand trial. (*Id.* at 20.)

The state habeas court found the following:

> 21. There were no indications to Mr. Watson that [Petitioner] was incompetent. [Petitioner] was able to understand their conversations and participate in their meetings when they discussed the discovery.
>
> 22. Although [Petitioner] indicated a lack of understanding concerning having to serve time in prison at one of their meetings, Mr. Watson believed [Petitioner] to be feigning this confusion. At this same meeting, [Petitioner] fully understand the discussion when it concerned a deal that would include probation.
>
> 23. At their next meeting, where Mr. Watson discussed the plea deal that [Petitioner] ultimately accepted, there was none of the previous confusion and

10

> [Petitioner] completely understood the deal. They also discussed his waiver of appeal which he understood.
>
> 24. Mr. Watson did attempt to negotiate for [Petitioner] to go to SAFP, but the State would not agree.

(ECF No. 12-11 at 11.)

As previously discussed, the plea agreement is prima facie evidence of Petitioner's awareness of the "'relevant circumstances and likely consequences'" of his plea. *Bradshaw*, 545 U.S. at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Petitioner's plea agreement also states he understood the terms of the plea agreement, his attorney has explained the legal effects of the agreement, and he was not coerced or misled into making the plea. Petitioner is unable to point to anything in the record which supports his allegation that his mental health issues rendered his guilty plea involuntary. Rather, Mr. Watson attested that Petitioner fully understood the consequences of pleading guilty and the state habeas court found that, despite occasionally feigning confusion, Petitioner understood the plea deal. Petitioner's conclusory and unsupported allegations of counsel's misrepresentations are not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Petitioner therefore fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

Petitioner also cannot show he would have insisted on proceeding to trial but for counsel's alleged errors. *Armstead*, 37 F.3d at 206. Again, such an assessment partially turns on "a prediction of what the outcome of a trial might have been." *Id*. In signing the waiver and stipulations in the plea agreement, the record indicates Mr. Watson fully explained to Petitioner his rights and the

plea agreement and that Petitioner understood the charges he was pleading to and the sentencing range. It is also apparent from the record that Petitioner traded his trial rights for a concurrent 10-year sentence on all three counts, when he had already been sentenced to 15 years imprisonment on the aggravated-robbery deferred adjudication. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to continue the trial and risk additional prison time.

The evidence before the Court supports a finding that Petitioner entered into his plea voluntarily, knowingly, and intelligently. Further, Petitioner has failed to show that his counsel's actions with regard to the plea agreement were deficient or that, but for his attorney's actions, he would have chosen to continue his trial. Petitioner has therefore failed to establish a valid IAC claim. *Hill*, 474 U.S. at 58. As a result, federal habeas relief should be denied because Petitioner fails to meet his burden of proof under the AEDPA. 28 U.S.C. § 2254(d).

## IV. Recommendation

The undersigned recommends that the District Court **DENY** Petitioner's Petition for Writ of Habeas Corpus.

## V. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the undersigned recommends that the Court should not issue a certificate of appealability.

## VI. Objections

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto.*

*Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this 9th day of December, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE